# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2022

Lyle W. Cayce
Clerk

———————

No. 21-30543

———————

John Thibodeaux; Amy Thibodeaux; Gabrielle Thibodeaux; Emily Thibodeaux,

*Plaintiffs—Appellees*,

*versus*

J M Drilling, L.L.C.; Insight Risk Management, L.L.C.; C R C Insurance Services, Incorporated, *incorrectly named as* Insurisk Excess & Supply Lines,

*Defendants—Appellees*,

*versus*

Rockhill Insurance Company,

*Defendant—Appellant*,

_____

Rockhill Insurance Company,

*Plaintiff—Appellant*,

*versus*

J M Drilling, L.L.C.,

*Defendant—Appellee*,

No. 21-30543

Insight Risk Management, L.L.C.; C R C Insurance Services, Incorporated,

*Third Party Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC 6:18-CV-501

---

Before Jolly, Elrod, and Haynes, *Circuit Judges.*

Per Curiam:*

While installing fiber optic cables in Louisiana, JM Drilling hit an underground sewer line. It did not notify anyone of this fact or seek any repairs. Thereafter, a three-foot sinkhole was formed. Without having received any warning, John Thibodeaux fell into it and suffered a severe injury as to which he recovered a jury verdict against JM Drilling in state court.

This case concerns certain insurance coverage for JM Drilling. The district court found coverage; we AFFIRM.[1]

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] The parties were asked on appeal to brief the question of federal court jurisdiction because the complaint failed to address the members of JM Drilling, which is a limited liability company. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). The record confirms that the amount in controversy exceeds $75,000 and that complete diversity exists, given the citizenship of the owner of JM Drilling. Accordingly, we conclude that the district court had jurisdiction, and we proceed to the merits. *See* 28 U.S.C. § 1653.

Relevant to this case, JM Drilling had two insurance policies, a primary policy by Admiral Insurance Company, which is not at issue here, and an excess liability policy from Rockhill Insurance Company that is the center of this dispute.  Rockhill's insurance incorporated the limits and exclusions of the Admiral Insurance Company policy but also added its own exclusions, the key one of which was the "Subsidence Exclusion," which provides:

> This policy will NOT apply: . . . .
>
> to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.
>
> It is further agreed that this insurance shall not become excess of any reduced or exhausted underlying aggregate limit to the extent that such reduction or exhaustion is the result of claims, damage, loss or expense arising out of or in any way related to the above.

Rockhill contends that this exclusion covers the sinkhole, which, in its view, was a subsidence.  The parties agree that Tennessee law applies here. Tennessee has a somewhat different version of concurrent cause analysis than some other states. *Compare Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887–88 (Tenn. 1991), *with Seahawk Liquidating Tr. v. Certain Underwriters*, 810 F.3d 986, 994–95 (5th Cir. 2016) (applying Texas law).  To sum up, "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." *Watts*, 811 S.W.2d at 887; *see Clark v.*

No. 21-30543

*Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012); *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 440 (6th Cir. 2001).[2]

It is undisputed that subsidence would be an excluded cause under the Rockhill Policy. But whether JM Drilling's negligence is a nonexcluded cause is disputed. A nonexcluded cause is a cause that is otherwise covered by the policy and is not specifically listed in the exclusion. Here, the Rockhill Policy covers "the ultimate net loss in excess of the amount payable under the terms of any Underlying Insurance . . . that the insured becomes legally obligated to pay as damages." There is no dispute that the general policy coverage applies here, but Rockhill contends the only cause of injury to Thibodeaux was subsidence such that the exclusion applies.

We agree that Rockhill makes a good argument that negligence that causes the sinkhole is part of the exclusion, but we disagree that the case ends there. Instead, we note that the parties also assert that the failure to report the damage was part of the negligence but did not cause the sinkhole. Rather, it contributed to the injury because if it had been reported, maybe it would have been fixed or, at least, there would have been some warning that would have avoided Thibodeaux working there. Per *Watts*, the mere relationship to the excluded conduct is not enough to cause everything to be excluded. 811 S.W.2d at 884–88. Thus, given that there is a mix of excluded and nonexcluded causation, we conclude that the district court did not err in finding coverage under the Rockhill policy.

AFFIRMED.

---

[2] Under Tennessee law, an insurer can avoid the effect of the "concurrent cause" doctrine by expressly including an anti-concurrent clause ("ACC") in the policy. *See Hardy & Kelly LLC v. QBE Ins. Corp.*, No. 3-11-0155, 2012 WL 1744670, at *3 (M.D. Tenn. May 16, 2012). While Rockhill did that on other exclusions, it did not on this one, so we agree with the district court that the ACC is not in play here.